United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EPL HOLDINGS, LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.: C-12-04306 JST (JSC)

**ORDER RE: PROTECTIVE ORDER DISPUTE (Dkt. No. 57.)**

In this patent infringement lawsuit the parties dispute the protections to be given to Defendant Apple Inc.'s ("Apple") confidential information and, in particular, its source code. Now pending before the Court is a joint discovery letter brief concerning the parties' proposed protective order. (Dkt. No. 57.) After carefully considering the parties' arguments, and having had the benefit of oral argument on May 16, 2013, the Court rules as set forth below.

**LEGAL STANDARD**

Upon a showing of "good cause," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by "requiring that trade secret or other confidential . . . commercial information not be revealed, or be revealed only in a specified

way." Fed. R. Civ. P. 26(c). The party seeking a protective order has the burden of showing that the protection is warranted. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Generally, good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued. *See Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004). In addition, the Court balances the conflicting interests between the protection of Rule 26(c) and the broad access to discovery conferred by Rule 26(b)(1). *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

The District's model protective order governs discovery unless the Court enters a different protective order. *See* United States District Court for the Northern District of California's Stipulated Protective Orders webpage, at http://cand.uscourts.gov/stipprotectorder ("The protective orders on this page are court-approved model forms to which counsel may stipulate in a particular case."); N.D. Cal. Patent L.R. 2–2 ("The Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order."). "Accordingly, the court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011).

**DISCUSSION**

The parties' dispute concerns several provisions in the proposed protective order. In particular, the parties seek resolution on the following issues: 1) access to "Confidential" information by non-parties; 2) scope of the patent prosecution bar; and 3) scope of source code protection.

**I. Access to "Confidential" Information by Non-Parties**

Plaintiff EPL Holdings, LLC ("EPL") baldly asserts that its "licensing agents," in addition to its officers and employees, should have access to Apple's "Confidential" information. The Court is not persuaded. First, the model protective order does not allow for a party to share the opposing party's confidential information with a non-party "licensing agent;" thus, it is EPL's burden to show that its provision lessening the safeguards of the protective order is reasonable. Second, EPL's contention that "it is a small company with only a handful of employees and has no in-house counsel

United States District Court
Northern District of California

or patent litigation specialist," does not justify distributing all of Apple's "Confidential" information to non-parties. EPL does not explain why every single Apple document designated "Confidential" must be available to non-parties. Moreover, EPL brought this action against Apple; EPL's apparent lack of internal resources to effectively pursue this action does not mean that Apple's confidential information should be exposed to non-parties.

## II. Scope of the Patent Prosecution Bar

Although the parties agree that a prosecution bar is appropriate, they disagree as to (1) whether the bar should extend to *inter partes* review, post-grant review, and reexamination proceedings before the Patent and Trademark Office ("PTO"), and (2) whether the bar should extend to the acquisition of patents.

### A. Legal standard

As an initial matter, the parties appear to dispute who bears the burden as to the scope of the prosecution bar. "[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010). Once a patent prosecution bar is imposed, however, the burden is reversed and the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*Id.* Apple's arguments assume that its version of the prosecution bar provision has been imposed and that EPL is simply seeking an exception to the provision. However, because the Court has not imposed either of the parties' proposed provisions, each party bears the burden to demonstrate that its version of the provision should be imposed pursuant to the *Deutsche Bank* standard.

United States District Court
Northern District of California

**B. *Inter partes* review, post-grant review, and reexamination proceedings**

EPL's proposed provision places *inter partes* reviews and post-grant reviews outside the scope of the prosecution bar; with respect to reexamination proceedings that are not initiated by or on behalf of the patent holder itself, "any person subject to [the prosecution bar] may advise reexamination counsel in any reexamination proceeding if the following conditions are met:"

> (1) the person's client retains reexamination counsel separate from, and unaffiliated with the person's firm in this case, (2) the person does not directly prosecute the reexamination, in whole or in part, (3) the person does not reveal "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" information to outside reexamination counsel, and (4) the person does not use "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" information for any purpose other than prosecuting this litigation.

(Dkt. No. 57-1 at 16.) Apple argues that EPL's proposed provision is inadequate because review and reexamination proceedings, though initiated by parties other than EPL, allow counsel to be in involved in competitive decisionmaking, such as limiting the scope of the patent.

A court in this District recently allowed litigation counsel a "limited role" in review and reexamination proceedings. *Grobler v. Apple, Inc.*, 12-1534, at *3 (N.D. Cal. May 7, 2013); *see also Shared Memory Graphics, LLC v. Apple, Inc.*, 2010 WL 4704420, at *4 (N.D. Cal. Nov. 12, 2010) (holding that patentee counsel should not be banned from reexamination proceedings so long as 1) the proceedings are not initiated by the patentee, and 2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party). Although the *Grobler* court recognized that patent claims may be restructured in review and reexamination proceedings in a way that would undoubtedly benefit from access to an alleged infringer's proprietary information, the court found that the burden on the patentee outweighed that concern. Specifically, the court determined that "reexamination or review proceedings are really nothing more than an extension of the litigation in the district court," and a total ban would burden a patentee with additional expense. *Id.* at *2-4 ("It would be one thing if the two matters were truly independent of one another. But if the PTO and district court are just two fronts in the same battle, allowing a limited role for a patentee's litigation counsel while prohibiting counsel from crafting or

amending claims is only reasonable."). The "limited role" for litigation counsel in *Grobler* prohibited counsel "from assisting in any crafting or amendment of the patent claims." *Id.* at *3. Given this limitation, the court concluded that Apple had failed to show "that, in defending the validity of the disputed patents, Grobler's litigation counsel would be engaged in the type of 'competitive decisionmaking' that would unduly risk inappropriate use of Apple's proprietary information." *Id.* The court noted, however, that "[t]hings might be different if counsel had free rein in the PTO proceedings." *Id.*

EPL's proposed provision conflicts with *Grobler* and *Shared Memory*. On the one hand, the provision places *no* restrictions on litigation counsel's ability to participate in *inter partes* or post-grant review. *Grobler*, however, based its decision to allow counsel to participate in review and reexamination proceedings on counsel's bar from assisting in any crafting or amendment of the patent claims. On the other hand, EPL's proposed restrictions for reexaminations proceedings—litigation counsel cannot "directly prosecute the reexamination proceedings, in whole or in part"—go beyond what *Grobler* and *Shared Memory* required for counsel's participation. EPL does not explain the disparity. Further, as Apple asserts, it is unclear what "directly prosecute" even means. In any event, EPL represented at the hearing that it would substitute its proposed provision for the provision adopted in *Grobler*.[1]

The Court concludes that EPL's litigation counsel, as with the litigation counsel in *Grobler*, may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims. In addition to being consistent with *Grobler*—another case in which Apple is a defendant and over which Judge Tigar presides—this conclusion is generally consistent with the model order's directives, which focus on counsel's activities in drafting or amending patent claims. *See* Model Protective Order at ¶ 8. Apple's lament that it is impossible to monitor counsel's compliance with this restriction is unpersuasive. *Grobler*, 12-1534 at *4 ("[T]he risk of counsel ignoring its duties is inherent even under Apple's proposed

[1] At the hearing, EPL asserted that it had already supplemented its proposed provision in light of *Grobler*. However, no supplemented provision has been filed with the Court.

United States District Court
Northern District of California

total ban, and in any event counsel is presumed to follow its obligations to adhere to this court's orders.").

**C. Acquisition of patents**

Apple's proposed prosecution bar provision expressly includes a ban on litigation counsel's participation in all patent acquisition activities. The District's model protective order does not explicitly include any such ban. At the hearing, EPL asserted that Apple's provision goes too far in that it bars counsel from advising clients on non-business matters that arise during patent acquisition, such as validity and standing. The Court agrees with EPL. The provision, however, is appropriate to the extent it forbids outside counsel from advising clients whether to acquire a patent closely related to the subject matter of this litigation.

The purpose of the prosecution bar is to mitigate the risk of inadvertent use of confidential information learned in litigation by barring litigation counsel's involvement in strategic decisionmaking related to the subject matter of the litigation. The acquisition of patents implicates this concern since litigation counsel may consciously or subconsciously use their knowledge of Apple's confidential information to advise a client on which patents to acquire, that is, patents that may be asserted against Apple. The key is that counsel may not use confidential information in carrying out those activities. EPL objects to Apple's proposed provision because, among other things, it prohibits counsel from playing any role in the acquisition of patents, including roles that do not pose the same risk as strategic decisionmaking with respect to patent acquisition. As Apple concedes, there is less danger in using or revealing protected information when counsel gives advice on legal matters, such as validity, in the patent acquisition process. While true that counsel must nonetheless be vigilant and not provide its business judgment while dispensing legal advice, the protective order already expects such vigilance as a basic principle. (*See* Dkt. No. 57-1 at 11 ("Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.").) Apple has not articulated any particular reason why the relationship between EPL and its outside litigation counsel poses a particular threat to Apple's confidential information justifying a broad patent acquisition bar. *See Unwired Planet LLC v. Apple Inc.*, 2013

WL 1501489 at *3, 7 (D. Nev. Apr. 11, 2013) (finding patent acquisition bar appropriate where Unwired—a non-practicing entity—used only a single law firm for its patent acquisition and patent litigation activities). In sum, the bar may prevent counsel from giving advice as to which patents to acquire, but may not prevent counsel from otherwise engaging in the acquisition process by, for example, giving legal advice on the validity of patents.

At the hearing, EPL also argued that the scope of the technology as to the patent acquisition bar was unreasonably broad. Apple conceded that the last clause in the disputed term—"or rendering temporal sequence presentation of data of digital media"—was unnecessary to protect its confidential information in the patent acquisition process and agreed to strike it. This clause is accordingly stricken from the proposed provision.

Finally, EPL also complained that Apple's proposed bar would inhibit counsel from engaging in settlement negotiations of litigation as such settlements sometimes involve the acquisition of patents. In *Unwired Planet LLC*, Apple's proposed acquisition bar expressly stated that "[n]othing in these provisions is intended to preclude counsel from participating in actions relating to settlement of litigations." 2013 WL 1501489 at *2. Apple has not identified any reason why its proposed bar in this case should not include the same caveat. It should.

In sum, the protective order should include a limited patent acquisition bar that prohibits counsel from advising clients as to which patents to acquire to the extent such patents are narrowly related to the subject matter of this litigation, but allows counsel to advise on legal matters involving such patents, including validity. Further, the bar must not apply to settlement negotiations of litigations.

**III. Source Code**

The parties dispute several provisions related to source code. Specifically, 1) use of computers and phones during source code review; 2) source code printing; 3) electronic images/copies of source code; and 4) final disposition. The Court addresses each dispute in turn below.

//

//

**A. Use of computers and phones during source code review**

EPL's proposed provision allows EPL's reviewers, while reviewing the source code, to use their own computers to take notes and their own cellphones "to confer with counsel into the review room." (Dkt. No. 57 at 3.) Apple's provision would permit EPL's reviewers to use an encrypted computer provided only by Apple; the provision bans cellphones and other "recordable media or recording devices." (Dkt. No. 57-1 at 18.)

Regarding the computer, the model protective order is silent as to the method by which a reviewer may make notes while inspecting the source code. In fact, the model protective order does not address whether a reviewer is even allowed to take notes. Given the highly sensitive nature of source code, the Court concludes that Apple's proposed provision captures the risks associated with source code review. Apple, as the owner of the source code, is incentivized to ensure that the computer the reviewer will use to take notes is as secure as possible. Although EPL undoubtedly also wishes to protect Apple's source code, its vigilance is not likely to be as great as Apple's. Further, EPL's contention that Apple's promise of security is "illusory" and that Apple will intentionally seek to retrieve the reviewer's notes is speculative and otherwise unpersuasive. The Court declines to presume that Apple would engage in such intentional misconduct.

Regarding the cellphone, Apple's main concern is that the cellphone would include a camera that could make an unauthorized recording of the source code. At the hearing, Apple represented that it would set up a landline telephone outside the review room for the reviewer's use. EPL did not object to this offer. The Court accordingly finds that Apple's proposed ban on cellphones and other similar devices is reasonable.

**B. Source code printing**

The parties dispute the number of contiguous pages of source code that may be printed for use during this action, such as in briefings to the court. Apple contends that source-code printing should be limited to five contiguous pages; EPL asserts the limit should be 50 contiguous pages. The model protective order contains no express limit; rather, the model order provides that "[t]he Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, [etc.]." Model Protective Order at ¶ 9(d).

In addition, the model order provides that "[t]he Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the 'Challenging Party' and the Receiving Party is the 'Designating Party' for purposes of dispute resolution." *Id.* Paragraph 6, in turn, places the burden of persuasion on the designating party if the dispute is brought to the court. The parties' provisions also include dispute resolution components; however, they differ as to which party bears the burden of persuasion.

As the parties acknowledge, the number of necessary pages of contiguous source code varies. Five pages may be sufficient for a briefing to the court, but a number greater than five pages may be necessary when deposing Apple's experts. Thus, placing a blanket limit on the number of source code pages is unhelpful. Indeed, the model protective order provides a dispute resolution procedure that Apple may use if it does not agree with the amount of pages EPL requests. For the same reason, the Court disagrees with EPL that it should be allowed to receive up to 50 pages of contiguous source code as a matter of right. Further, EPL's provision improperly switches the burden of persuasion, requiring the producing part to show that the number of pages requested is unreasonable. The model order places the burden on the receiving party.

**C. Electronic images/copies of source code**

While the parties agree that electronic filing of source code with the court may sometimes be necessary, the parties disagree as to the requirements for obtaining and submitting electronic copies of the source code. The model protective order does not explicitly address electronic submission of source code to the court. It does, however, provide that "[t]he Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format." Model Protective Order at ¶ 9(e). EPL's proposed provision overturns this ban: "The Receiving Party shall be entitled to make an electronic copy or other copy of only the portions of Source Code needed to be made for a Court filing, pleading, or other paper (including a testifying expert's expert report)." (Dkt. No. 57-1 at 22.) EPL does not explain why such a departure from the model order is reasonable. Apple proposes that the parties meet and confer regarding any electronic submission and that the producing party explicitly agree to

United States District Court
Northern District of California

any electronic submission of source code. Given the high risk associated with producing electronic copies of source code and then transferring those copies online, the Court concludes that Apple's restrictions are reasonable. The restrictions ensure that only those electronic copies that are absolutely necessary will be made and transferred.

At the hearing, EPL argued that requiring it to seek Apple's consent would cause its filings with the court to be unnecessarily delayed and the contents of those filings to be determined by Apple. EPL is incorrect on both points. The Court does not expect the process posed by Apple to cause a substantial delay in EPL's filings. Indeed, the procedures Apple envisions are already largely accounted for in this District's Local Rules—that is, for an administrative motion to file under seal, the moving party must include a stipulation or a declaration that explains why a stipulation could not be obtained. *See* N.D. Cal. Civ. L.R. 7-11. The District's rules thus expect the parties to meet and confer prior to the filing of confidential information; Apple's proposed provision merely adds to this requirement. Moreover, any harm in delay does not outweigh the risk posed by creating electronic copies of source code unnecessarily. Finally, if Apple declines to grant EPL's request to generate electronic copies of source code, EPL is not without recourse; EPL may bring the dispute to the court for resolution.

**D. Final disposition**

The model protective order provides that "[w]ithin 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material." Model Protective Order at ¶ 15. The model order, however, states that "[n]otwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, *even if such materials contain Protected Material*." *Id.* (emphasis added). Apple's proposed provision departs from the model order in that it requires counsel to return or destroy any pleading, correspondence, or consultant work product that contains source code.

Apple contends that this departure is justified because allowing a party to retain source code indefinitely substantially increases the likelihood that the source code is leaked, even inadvertently,

to the public. The Court agrees. After litigation ceases and time passes, the protections afforded to documents containing source code are likely to decrease. As Apple asserts, files get lost over time, attorneys leave law firms, and some law firms even dissolve.

Further, the harm to the receiving party does not outweigh the harm to the producing party. EPL contends that these documents should not be returned since EPL "may be required to preserve evidence if other cases involving the same patents are still pending," and because it is "not unheard of that terminated matter must be re-opened." (Dkt. No. 57 at 4.) While it may be helpful to EPL to use documents containing Apple's source code in another case, that hardly justifies retaining Apple's confidential information indefinitely. Indeed, the protective order precludes EPL from using confidential information obtained in this litigation in any other litigation. Further, EPL does not explain how the case would be re-opened after final disposition. Finally, EPL's concern that some of its counsel's protected work product will be turned over to Apple is moot because Apple has agreed that such documents may be destroyed rather than returned to the producing party.

**CONCLUSION**

For the reasons stated, within 20 days of the date of this Order, the parties shall submit to the undersigned judge a revised proposed protective order that reflects the Court's rulings discussed above.

IT IS SO ORDERED.

Dated: May 20, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE