RUSS AUGUST & KABAT LAWYERS

12424 WILSHIRE BOULEVARD
12TH FLOOR
LOS ANGELES CALIFORNIA 90025
TELEPHONE 310.826.7474
FACSIMILE 310.826.6991

June 10, 2013

**Via ECF**

The Honorable Jacqueline S. Corley
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *EPL Holdings, LLC v. Apple Inc.*, CV 12-4306 JST (JSC)**
**Joint Letter Re: Protective Order**

Dear Judge Corley:

Pursuant to this Court's Order (D.I. 62) dated May 20, 2013, Plaintiff EPL Holdings, LLC ("Plaintiff" or "EPL") and Defendant-Counterclaimant Apple Inc. ("Defendant" or "Apple") (collectively, "the Parties"), having met and conferred, request that the Court enter a protective order and resolve a dispute over new language EPL seeks to add to paragraph 9(k), as shown in the Proposed Protective Order attached hereto as Exhibit A.

## ¶ 9(K)—USING SNIPPETS OF SOURCE CODE IN PLEADINGS AND EXPERT REPORTS

### A. PLAINTIFF EPL

As the Court has recognized, and Apple had admitted, there will be times when source code must be presented to the Court.[1] EPL's present proposal merely clarifies this procedure under ¶ 9(k) of the Proposed Protective Order (Ex. A). In order to draft a brief, motion, or other paper (including expert reports) containing small snippets or quotations of source, EPL proposes that it be allowed to draft such papers electronically (e.g., using Microsoft Word) to serve them on Apple in paper form. Contrary to Apple's straw man argument that EPL could "paste" source code, when a snippet or quotation of source code needs to be included, EPL would be required to manually type into the electronic draft the snippet or quotation of source code (thus no other electronic copy of source code would be created).[2] The electronic draft would be encrypted at all times. This could be easily done, e.g., using Microsoft Word's Encrypt with Password feature.[3] Consistent with the Court's ruling at the May 16th hearing, the electronic drafts would not be filed without first meeting and conferring with Apple. Also consistent with the Court's ruling,

---

[1] *See* Order re: Protective Order Dispute, Dkt. No. 62, at 9 ("[T]he parties agree that electronic filing of source code with the court may sometimes be necessary."); *see also* Joint Letter Brief, Dkt. No. 57 at 8 (Apple stating, "Apple recognizes that there may be certain limited circumstances where it becomes necessary to present electronic copies of excerpts of source code to the Court.").

[2] Apple repeatedly misrepresents EPL's proposed clarification by arguing that EPL would be allowed to "paste" source code. EPL's proposed clarification expressly prohibits EPL from making electronic copies of paper copies of source code. It is simply impossible for EPL to copy and paste from a paper copy of source code. Hence, EPL has no possible way to "paste" source code.

[3] *See* http://office.microsoft.com/en-us/word-help/password-protect-documents-workbooks-and-presentations-HA010148333.aspx ("In the **Encrypt Document** dialog box, in the **Password** box, type a password, and then click **OK**. You can type up to 255 characters. By default, this feature uses AES 128-bit advanced encryption. Encryption is a standard method used to help make your file more secure." (underlining added)).

EPL cannot make any electronic copies of any source code exhibits until meeting and conferring with Apple. Finally, EPL's proposal is consistent with the Court's view that the procedure for including source code in filings would not delay EPL's ability to "file" papers without delay:

> **MR. HARE:** If we can't get out brief due and we end up having to meet and confer for two weeks, then we have to push back this date, [and that] date.
>
> **THE COURT:** Well, what [Apple]'s proposing is that — and which is sort of what — or at least what used to happen, in any event, anyway. The Local Rules all messed up as to filing under seal. It needs to be revised. That you used to file just a paper version anyway under seal, until you then got the order from the Court allowing you to file it under seal.
>
> So there are ways you could come up with a process that there's no delay, as <u>[Apple]'s suggested, which is that you just file your paper version, and then you meet and confer — so it's filed, no delay</u>. <u>And then while they're working on their opposition or reply, or whatever it be, then</u> <u>you work out a meet and confer on how to file the electronic report part</u>.
>
> . . . .
>
> **MR. HARE:** We could live with that.
>
> **THE COURT:** Okay. All right. So I'll try to incorporate, but I think that's what [Apple] proposed there . . . .[4]

EPL is now forced to seek further clarification because Apple has shifted its position. During the May 16th hearing, Apple argued ¶ 9(k) would only require EPL to meet and confer prior to <u>filing</u>:

> **THE COURT:** I don't know that they need to know — what — what is it that — exactly that you want to meet and confer on?
>
> **MR. JAY:** I mean — I mean, I think — you know, it's common, I think, when — when you file things, you end up filing too much, right? I mean, I — I'm guilty of it. I think most lawyers are guilty of it. You file too much, and especially with the source code. What we're talking about here is something that's very rare. I mean, it —
>
> **THE COURT:** Right.[5]

Apple never argued that EPL would need to meet and confer before <u>drafting</u> its briefs, motions, etc. However, after the hearing, Apple changed its position to now insist ¶ 9(k) should prevent EPL from including source code in drafting of papers without meeting and conferring in advance. This requirement, which was not requested by Apple previously, frustrates the procedure Ordered by the Court. Indeed, Apple has already informed EPL that it would never agree to allow EPL to include any of its source code in a brief, motion, etc., meeting and conferring before EPL began drafting would be pointless. EPL will be forced to bring this issue to the Court every time it needed to include a snippet of source code in a brief, motion, etc. EPL could not complete the drafting until the issue is resolved by the Court. Nor could EPL even file in paper form. Apple is now seeking to prohibit the exact procedure it advocated.

---

[4] Hearing Tr., May 16, 2013, 38:3–39:7 (emphasis added).

[5] Hearing Tr. May 16, 2013, 35:13–22.

Apple has provided no persuasive basis for its new position. For example, Apple has argued that there is no definition for a snippet or quotation of source code. Setting aside that Apple could have raised this argument previously but apparently understood the language until recently, a snippet or quotation has a common meaning: a relevant portion of source code. Regardless of Apple's baseless objection, EPL attempted to engage Apple on this point. EPL offered to place a reasonable limit on the maximum number of lines of source code that could be quoted. Apple refused this proposal on the basis of its position that no source code should ever be included in a brief.

When source code is at issue, it is extremely useful to the Court to actually see the source code and have counsel explain its relevance in narrative form. If EPL could only cite to the source code contained in an exhibit, the Court would have to flip back and forth and interpret the code for itself. Being able to quote and explain the source code in narrative form is critical. EPL will no doubt have to defend against, e.g., no-evidence summary judgment motions and motions to strike its experts' opinions. Hence why Apple's position is extremely prejudicial to EPL.

Apple has also argued EPL's proposed clarifications would vitiate other source code protections in the Proposed Protective Order. That is simply not true. EPL's proposed clarification only applies to small snippets or quotations of source code, which is a small fraction of the printed source code, which is a small fraction of the source code that will be produced, which is a small fraction of the source code for an accused product. Furthermore, the small snippets or quotations would be contained in encrypted drafts. Those encrypted drafts would only be in the possession of EPL's outside counsel and/or experts at all times, who already have access to the printed source code.

It is anticipated that Apple will argue that EPL could "email around" electronic drafts of briefs, motions, etc. that included source code. This argument is flawed. First, the electronic drafts would still be encrypted and inaccessible even if compromised. Apple itself argued that encryption would be sufficient to protect sensitive information about its source code, i.e., encryption would be used to secure EPL' privileged notes about Apple's own source code.[6] There is no restriction on EPL or Apple "emailing around" encrypted versions of EPL's notes. Apple has no explanation why the same encryption would be insufficient now. Second, EPL's proposal only permits it to include a few lines of source code in a brief, motion, etc. It expressly prohibits electronic copies of source code exhibits, which were Apple's sole concern when advocating for its proposal to be adopted for ¶ 9(k). Moreover, EPL's reviewer notes will contain far more sensitive information than a few lines of source code in a brief. That is because the reviewer notes will contain pages and pages of detailed notes regarding all of Apple's source code produced for inspection in this case. Finally, under EPL's proposed clarification, the encrypted drafts would stay only in the possession of persons who already had access to printed copies of source code—unlike EPL's privileged note which would be in the possession of the very persons who are not entitled to view them. The legitimate security concerns EPL had with using an Apple-provided laptop for taking confidential notes do not apply here.[7]

---

[6] *See* Dkt. No. 57 at 7 ("Apple would not be able to review the notes taken on this computer, because (i) all notes on the computer would be encrypted, and (ii) all notes would be provided electronically to EPL's expert at the end of each day on which the notes were created and subsequently deleted from the computer." (emphasis added)).

[7] That is because when EPL's counsel and experts draft motions, briefs, etc., they will be doing so using their own computers that they know do not have any key-catching software or other caching mechanisms—unlike if they were using an Apple-provided computer. In the latter situation, where EPL did not have administrative access (e.g., could not access the BIOS), it would be impossible for EPL to implement sufficient security measure to ensure the confidentiality of EPL's notes. But here, because EPL's counsel and experts control the computers they will use, they can reasonably ensure the security of electronic drafts using encryption technology, e.g., by using the "AES 128-bit advanced encryption" feature built right into Microsoft Word. *See* note 3 *supra.*

In sum, EPL's proposed clarification permits the parties to efficiently litigate this case with virtually zero increase in risk of disclosure.

EPL does not believe oral argument is necessary here and requests that the Court resolve this dispute based on the papers. The issues raised here are not new and were addressed during the May 16th hearing. During oral argument, EPL raised the issue of whether it could draft its briefs, motions, etc. without delay.[8] In response, Apple argued that its proposal for ¶ 9(k) would not cause delay because its proposal only prevented EPL from filings papers containing source code—not drafting such papers.[9] Apple never argued that anything in ¶ 9(k) prevents EPL from drafting its briefs, motions, etc. using facts that are necessary.

### B. DEFENDANT APPLE'S POSITIONS

Allowing EPL to paste portions of Apple's source code into draft pleadings and expert reports—documents routinely sent over email, printed for review, and placed on flash drives—would eviscerate the source code protection measures set forth in the remainder of the Protective order.

Unhappy with the Court's ruling on the parties' Protective Order disputes, EPL has ignored the Court's directive to submit "a revised proposed protective order that reflects the Court's rulings" in its May 20, 2013 Order. Instead, EPL has added to the Protective Order *entirely new language*[10] that is inconsistent with the Court's May 20 Order, contrary to the remainder of the very provision of the Protective Order on which the Court ruled, and contrary to the Northern District of California Model Protective Order. EPL's new language, never before proposed in the many months of negotiations between the parties, would allow it to paste—whether by manually typing or otherwise—"snippets" (i.e., blocks of unspecified size) of Apple's source code into drafts of pleadings and into draft and final expert reports[11].

In its May 20 Order, the Court ruled in favor of Apple's proposed provision requiring that the parties meet and confer regarding the procedure for submitting to the Court source code as an exhibit in the rare event that it is necessary to do so. (May 20, 2013 Order at 9–10.) In ruling in Apple's favor, the Court squarely rejected EPL's proposed language in paragraph 9(k) that would have allowed EPL to make copies (electronic or otherwise) of Apple's source code:

---

[8] *See* Hearing Tr., 34:10–21 and 37:18–38:5.

[9] *See, e.g.*, Hearing Tr., 35:13–18 (Apple arguing, "when you file things, you end up filing too much." (emphasis added)) and 36:3–37:8 (Apple arguing, "we agree they would file say like a motion for summary judgment, for instance, where they think there needs to be some source code. They could go ahead and file it . . . . We don't need to get advance notice of anything." (emphasis added)).

[10] EPL's Proposal:

> For the sake of clarity, in order to electronically draft (e.g., using Microsoft Word) filings, pleadings, or other papers (including a testifying expert's report) that a Party reasonably believes requires the inclusion of snippets or quotations of Source Code, the Party may include such snippets or quotations of Source Code in such electronic drafts so long as such electronic drafts are encrypted, are not filed electronically or publicly disclosed, and do not include Source Code exhibits, until the Parties have met and conferred as described below.

[11] Notably, expert reports are not filed with the Court, but served, and thus require only citations to source code. They do not require the attachment of or the inclusion of "snippets" of source code.

> EPL's proposed provision overturns this ban: "The Receiving Party shall be entitled to make an electronic copy or other copy of only the portions of Source Code needed to be made for a Court filing, pleading, or other paper (including a testifying expert's expert report)." (Dkt. No. 57-1 at 22.) EPL does not explain why such a departure from the model order is reasonable.

(*Id.* at 9.) While the precise language that EPL now proposes differs from that which the Court rejected, the effect of the language is the same. In other words, EPL is relitigating a provision that the Court has already rejected.

As Apple described in the first letter brief submitted to the Court, Apple's source code is its most valuable asset. As one of the largest and most highly publicized companies in the world, Apple's trade secrets are extremely sought after. If Apple's most sensitive trade secrets—its source code—were to be disseminated in any manner, even inadvertently, Apple would face potentially devastating competitive harm. Furthermore, the confidentiality of Apple's source code helps it to keep it products secure from hacking and other threats, such as viruses. Any breach of security would result in grave and irreparable harm that could affect not only Apple, but millions of consumers.

In recognition of the sensitivity of source code, the Protective Order lays out extensive procedures for the review and handling of source code. Although the Protective Order allows for limited printing of source code, it is clear that source code should not be copied directly into briefs or expert reports: "the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code)." (Protective Order ¶ 9(k).) The Northern District of California Model Order is also clear on this point: "The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format." (N.D. Cal. Model Prot. Order at 15.)[12]

The only justification that EPL offers for its departure from the express language already in the Protective Order (and in the Model Protective Order) is that "it is extremely useful to the Court to actually see the source code and have counsel explain its relevance in narrative form." Apple agrees that electronic filing of source code with the court may sometimes be necessary. But EPL does not (and could not) explain how the current provisions in the Protective Order providing attachment of source code as an exhibit would prevent the Court from "see[ing] the source code and hav[ing] counsel explain its relevance in narrative form." EPL goes on to say that if "it could only cite to the source code contained in an exhibit, the Court would have to flip back and forth and interpret the code for itself." While it is true that the Court would need to "flip back and forth" to review the source code exhibit, it does not follow that the Court would somehow be left to "interpret the code for itself." Apple respectfully submits that requiring the

---

[12] Apple has been entirely consistent on this issue as well, never once representing that a party should be able to paste (manually or electronically) source code into a pleading or expert report. EPL argues that Apple's objection to EPL's new language demonstrates a "shift[] in position," but that is simply untrue. Indeed, the portion of the hearing transcript that EPL cites to show Apple's "shift[] in position" shows nothing of the sort. (*See* May 16, 2013 Hearing Tr. at 35:13–22.)

Court to "flip back and forth" to review an attached exhibit is at most a minor inconvenience that would hardly justify putting Apple's source code at risk. In fact, there are simply no circumstances in which actual pieces of the code need to be pasted into a brief (or expert report). The Court is not normally required to make determinations based on its own direct review of source code. If such review, however, were for some reason necessary, attaching source code as an exhibit will reasonably facilitate such review.

Moreover, EPL's new language ignores the ease by which copying Apple's source code into pleadings and expert reports could lead to the disastrous dissemination of that code. Drafts of expert reports are routinely transmitted to and from experts through insecure, personal or college email addresses. There are a wealth of publicized instances of personal email accounts being hacked. Similarly, experts or attorneys often print drafts of expert reports for review. These paper copies can easily be lost or stolen. The same holds true for drafts of pleadings. It is also not uncommon for electronic copies of expert reports and draft pleadings to be placed on personal laptop computers or transported via portable media, such as flash drives. As with the paper copies, laptops and flash drives can be easily lost or stolen.

EPL argues that Apple's concerns are mitigated because EPL will encrypt any expert reports or pleadings that contain Apple's source code. But encryption can be broken, especially by hackers or other sophisticated computer experts who regularly seek out and broadcast virtually every scrap of activity they can learn about Apple's products and activities. EPL claims that Apple's position here regarding encryption contradicts statements it made about encrypting the notes of EPL's experts who use the note-taking laptop that Apple will provide. The difference, however, is that neither Apple nor its counsel would ever even consider violating the Protective Order (and a myriad of ethical rules) by engaging in the extreme act of trying to "break into" EPL's expert's notes. The same cannot be said of hackers and others in the tech blogosphere that have demonstrated an obsession with Apple's technology.

Even with well-intentioned safeguards, EPL's new protective order language would put Apple's source code at substantial risk of public dissemination, thereby putting Apple and the public at risk of suffering irreparable harm. In this instance, there is no justification for EPL's proposal. And even if there were, any such justification cannot outweigh the risk.

To the extent that the Court believes that a hearing on this new issue that EPL has raised would assist the Court in ruling on this dispute, Apple respectfully requests the opportunity to be heard on the issue.

* * *

For the reasons discussed above, the Parties request the Court resolve the disputed provision and enter a protective order.

Very truly yours,

_/s/ Marc Fenster_
Marc Fenster
Lead Counsel for EPL Holdings, LLC

_/s/ Michael Jay_
Michael Jay
Lead Counsel for Apple Inc.