1

2

3           UNITED STATES DISTRICT COURT

4           NORTHERN DISTRICT OF CALIFORNIA

5

6    EPL HOLDINGS, LLC,                        Case No.  12-cv-04306-JST

                      Plaintiff,
7
                                              **CLAIM CONSTRUCTION ORDER**
8          v.
                                              Re: ECF No. 82
9    APPLE, INC,

                      Defendant.
10

11         In this patent infringement action involving methods for modifying the playback speed of

12   media files, the parties seek construction of seven terms used in the four patents-in-suit.

13   **I.    BACKGROUND**

14         **A.    The Patents-in-Suit and Remaining Asserted Claims**

15         EPL Holdings alleges that Apple infringes four of its patents through the sale and

16   distribution of certain products, including the iPhone, the iPod Touch, the iPad, MacBook Air,

17   MacBook Pro, Mac mini, iMac, and Mac Pro.  Compl., ECF No. 54.  The following chart

18   identifies the four patents-in-suit and the remaining asserted claims:

| Patent | Claims |
|--------|--------|
| U.S. Patent 5,175,769 ("the '769 patent") | 1, 2, 10, 11 and 19 |
| U.S. Patent 7,683,903 ("the '903 patent") | 1, 3, 4, 6, 12, 13, 16 and 22 |
| U.S. Patent 8,345,050 ("the '050 patent") | 1, 3, 4, 5, 8, 10, 13, 15, 16, 17, 20, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 36, 37, 38, 39, 40, 41, 42, 43, 44, 47, 48, 49 and 50 |
| U.S. Patent 8,384,720 ("the '720 patent") | 1, 6, 7, 10 and 11 |

26         **B.    The '769 Patent**

27         The '769 patent, entitled "Method for time-scale modification of signals," teaches a

28   method for rendering an audio file with modifications to its original playback speed, which are

United States District Court
Northern District of California

known as "time-scale modifications" or "TSM," in a manner that does not result in perceptible pitch distortions typically associated with such modifications, such as "Alvin and the Chipmunks" effects, audible splicing, or reverberation.

The patent distinguishes the invention from prior methods for achieving TSM, each of which has significant drawbacks. For example, some of these prior methods require large amounts of computation; some cannot achieve clean TSM of complex signals, such as music files; and others result in audible clicks or pops. Importantly, the patent improves upon a predecessor TSM method titled "Synchronized Overlap-Add" or "SOLA," which achieves TSM without noticeable pitch distortion by performing the time modifications in two stages. In the first, "analysis stage," the SOLA method slices and separates input signals at a fixed rate upon receipt; in the second, "synthesis stage," it overlaps and merges the slices with the output signal at a dynamic rate before outputting the modified signal. The patent describes SOLA as being inefficient in achieving the desired signal modifications. This inefficiency is caused by the method's use of variable rates of overlap in the synthesis stage, which requires a large amount of computation.

The invention, titled "Synchronized Overlap-Add, Fixed Synthesis" or "SOLAFS," improves upon SOLA by switching the dynamic and fixed aspects of the SOMA method from one stage to the other, such that the invention takes slices of an input signal and separates them at a dynamic, as opposed to fixed, rate in the analysis stage, and it then overlaps and merges the slices with the output signal at a fixed, as opposed to dynamic, rate in the synthesis stage before outputting the modified signal. The invention's use of fixed rates of overlap in the synthesis stage reduces the number of computations required to produce the desired modification relative to the SOLA method.

The invention operates as follows. In the analysis stage, the invention takes slices of the input signal, namely "analysis windows" of window length "W," at a variable rate (within limits). It then then searches for the starting position in the analysis window that is the most similar to the portion of the output signal where the overlapping will take place by evaluating a predetermined number of samples within the analysis window for "maximum similarity." The invention then selects the starting position of the analysis window with the maximum similarity to the overlap

United States District Court
Northern District of California

portion of the output signal and then overlaps and merges it with the appropriate portion of the output signal at a fixed rate.  The process for determining the next starting position then repeats until the selected time modification is completed.

The specification teaches that the invention sometimes can determine the starting position of the analysis window that has the maximum similarity to the overlap portion of the output signal without having to evaluate each of the starting positions in the sample for "maximum similarity."  This process is referred to as "prediction."  Prediction is possible when the invention recognizes that the region of the output signal where the overlapping will occur also is contained in the sample of starting positions in the analysis window.  In this situation, which occurs most frequently when the desired time modification is mild, the invention can "predict" with certainty that one of the starting positions that is identical to the overlap region of the output signal will achieve the maximum similarity, and it can therefore select one of these starting positions without having to evaluate any of the remaining starting positions in the sample.  When prediction takes place, the selected starting position is merely overlapped, and not merged, with the output signal; merging is not necessary because the overlapped regions are identical.

Six of the seven terms to be construed are found in this patent.

**C.     The '903 Patent, the '050 Patent, and the '720 Patent**

The remaining term is found in the '903 patent, the '050 patent, and the '720 patent.  These patents share a specification and teach methods for ensuring that media with a modified playback speed is correctly rendered in a variety of rendering systems.  Rendering systems typically track the current position of a media file being played, which is referred to as "current time," and utilize this data to perform a variety of tasks associated with rendering the media file.  The concept of "current time" can be indicated either by the amount of elapsed presentation time ("presentation time") or the amount of elapsed content ("data time").  When a media file is rendered at a normal rate, presentation time and data time are equivalent, and for that reason, it does not matter whether a rendering system measures current time based on the presentation time or the data time.  When a media file is rendered on a modified time-scale, however, the presentation time and the data time are not the same.  Thus, in the context of a media file with a modified time-scale, problems arise

3

when a rendering system is incapable of tracking presentation time and data time separately, because some components of the system will interpret current time as indicating the presentation time, while others will interpret it as indicating the data time.  The invention addresses these problems by tracking presentation time and data time independently from the rendering system, determining the type of time data required by the rendering system in order to render a media file on a modified time-scale, and providing such information to the rendering system.

## II.        LEGAL STANDARD

The construction of patent claim terms is a matter of law for the court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  A "bedrock principle" of patent law is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005).  In construing a patent term, the "objective baseline" is "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]"  Id. at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification" and the prosecution history.  Id.

The "primary basis for construing [a] claim" and "the best source for understanding a technical term" is a patent's intrinsic evidence.  Id. at 1314.  Intrinsic evidence includes the patent and its file history, including any reexaminations and reissues, related patents and their prosecution histories, and the prior art that is cited or incorporated by reference in the patent-in-suit and prosecution history.  Id.  Extrinsic evidence refers to all other types of evidence, including inventor testimony, expert testimony, documentary evidence of how the patentee and alleged infringer have used the claim terms, dictionaries, treatises, and other similar sources.  Id. at 1318. The intrinsic evidence trumps any extrinsic evidence that would contradict it.  Id. at 1314.

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

## III.   DISCUSSION

### A.   "determining an input block of W signal representations from the input stream" – '769 Patent claims 1, 10, 19

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| plain and ordinary meaning, subject to the term "W" defined separately | "searching for and identifying the starting position of an input block of W signal representations that is similar to the output stream"<br>or<br>"searching for and identifying the starting position of an input block of signal representations that is similar to the output stream" |

**The Court adopts Apple's first proposed construction.**

This construction tracks the specification, which describes "the present invention" as supporting only one manner of "determining" the portions of the input signal that will be overlapped with the output signal, namely one in which the claimed method "search[es] for segments of the input signal near the target starting position Sa which are similar to the portion of the output signal that will overlap when constructing the output signal." '769 Patent col. 5 ll. 7-20; see also id. col. 16 ll. 63-68 to col. 17 ll. 1-2 ("In particular, the method operates by searching for similar regions in an input and an output and then overlapping the regions to produce a time-scale modified output.")

The term demands construction because it is not a "general descriptive term," as EPL contends.  See EPL Brief at 9.  The term has special meaning in light of the specification, which, as discussed above, describes the "present invention" as "determining" input blocks through the particular method described in the construction adopted by the Court.  Where, as here, the patentee describes "the invention" as having a particular limitation, the claims are not necessarily entitled

5

to a scope broader than what the specification describes.  See Honeywell Int'l, Inc. v. ITT Indus.,

Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006) (construing claim term to include fuel filter because

"[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or

'the present invention'"); see also Edwards Lifesciences LLC v. Cook Inc., 582 F.3d 1322, 1330

(Fed. Cir. 2009) ("[W]hen the preferred embodiment is described in the specification as the

invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

EPL also argues that Apple's proposed construction improperly excludes a preferred

embodiment, namely the one that involves determining input blocks through "prediction."  EPL

Brief at 11-12.  This argument is unsupported by the specification, which teaches that prediction is

merely a truncated version of the "searching for and identifying" described in the construction

adopted by the Court.  Before any portion of the output signal can be reconstructed in accordance

with a selected TSM, the invention first must search for and identify the starting position of the

analysis window that has the maximum similarity to the portion of the output signal where the

overlapping will occur.  When prediction is not possible, the invention must evaluate every

starting position in a predetermined sample of the analysis window to determine which of them

has the maximum similarity to the overlap portion of the output signal.  But, when prediction is

possible, the invention need not evaluate the similarity of every possible starting position; instead,

as soon as the invention recognizes that a starting position in the predetermined sample is identical

to the overlap region of the output signal, the invention can stop the searching-and-identifying

process and simply select and overlap that starting position with the output signal.  See '769 patent

col. 5 ll. 42-64.  Prediction does not obviate the need to "search for and identify;" it merely cuts

that process short.  As such, the Court's construction of the term at issue does not exclude

prediction.

Finally, EPL contends that Apple's proposed construction is barred by the doctrine of

claim differentiation, because dependent claim 3 contains the limitations present in Apple's

construction.  The Court concludes that the doctrine of claim differentiation does not counsel

against adopting Apple's proposed construction, because dependent claim 3 would not be rendered

superfluous by that construction, as it contains various other limitations that are not present in

independent claim 1.  See SRAM Corp. v. AD-II Eng'g , Inc., 465 F.3d 1351, 1358 (Fed. Cir.

2006) (restricting independent claim to a term present in a dependent claim because additional differences existed between the independent and dependent claims).

### B.   "Wov" – '769 patent claims 1, 2, 10, 11

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| "a parameter that represents the number of signal representations to be overlapped as determined by W and the time-scale modification" | "a parameter that represents a fixed number of signal representations to be overlapped as determined by W and the time-scale modification"[1] |

The dispute with respect to this term centers on whether the number of signal representations to be overlapped is "fixed" for a particular time-scale modification.

The Court agrees with Apple that the word "fixed" must be a part of the construction of the term because the number of signal representations to be overlapped always is "fixed" for any given time-scale modification. **Accordingly, the Court adopts Apple's proposed construction.**

This construction is consistent with the specification, which expressly provides that "Wov is a predetermined, <u>fixed</u> number" that is equivalent to "W – Ss." <u>See</u> '769 patent col. 7 ll. 23-47 (emphasis added); col. 8 ll. 1-7.

EPL argues that the inclusion of the word "fixed" in the definition is improper because it limits the value of Wov to a "single, fixed value" even though "there are many possible values of the different parameters that can be used to achieve a time-scale modification as described in the '769 patent." EPL Reply at 6-7. This argument misunderstands of the scope of Apple's proposed construction. The use of the word "fixed" does not improperly restrict the parameter at issue to any specific values. Instead, the word merely indicates that once a specific time-modification is

---

[1] Apple filed an amended claim construction statement that contains revised proposed constructions for Wov, Ss, and W, which differ from the constructions listed in the parties' original joint claim construction statement. <u>Compare</u> ECF No. 85, <u>with</u> ECF No. 78. The amended claim construction statement also contains a revised version of Apple's proposed construction for "current time," but this revision is not substantive. <u>See</u> ECF No. 85 at 1 n.1 (noting that revision to "current time" is limited to correcting a typographical error).

United States District Court
Northern District of California

selected, the method then chooses a specific value for W and Ss based on that time modification, which in turn fixes a value for Wov for the purpose of executing the selected time modification. See '769 patent col. 15 ll. 30-40.

**C.    "determined by" — '769 patent claims 1, 19**

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| plain and ordinary meaning | "uniquely specified by" |

The term "determined by" appears in claims 1 and 19 in the following context: "where Wov is determined by W and the time-scale modification."

**The Court adopts Apple's proposed construction.**

Contrary to EPL's arguments, the plain and ordinary meaning of the words "determined by" cannot be defined based on whether they are "unique or unusual" or whether they have "common usage." EPL Brief at 17. Rather, the "ordinary meaning" of these words must be based on the meaning that the words would have to a person of ordinary skill in the art in light of the specification and prosecution history. See Phillips, 416 F.3d at 1313. Here, the specification describes the values of Wov in the context of mathematical formulas that enable time-scale modifications to be performed on any given media file. Specifically, as discussed in the previous section, the specification defines the term Wov as "Wov = W – Ss." See '769 patent col. 8 ll. 1-9. In this context, the term "determined by" takes a precise arithmetical meaning that conveys the existence of a direct mathematical relationship between Wov and a particular time-scale modification and the parameters that are affected by that modification (W and Ss). This meaning is adequately captured by Apple's proposed definition.

//

//

//

//

//

//

8

D.      "W" – '769 patent claims 1, 2, 10, 11

| EPL's proposed construction | Apple's proposed construction |
| --- | --- |
| "a parameter that represents the duration of the windowed segments of the input signal" | "a parameter that represents a fixed duration of the windowed segments of the input signal that is the smallest unit that the time-scale modification method manipulates" |

**The Court adopts a modified version of Apple's proposed construction, namely "a parameter that represents a fixed duration of the windowed segments of the input signal and that is the smallest unit of the input signal that the time-scale modification method manipulates."**

This construction is consistent with the specification, which teaches that "window length W is the duration of windowed segments of the input signal—this parameter is the same for input and output buffers and represents the smallest unit *of the input signal*, for example, speech, that is manipulated by the method." '769 patent col. 7 ll. 7-21 (emphasis added). Apple's proposed construction omits the definitional phrase "of the input signal" and therefore is not entirely accurate.

EPL argues in favor of a definition that omits the word "fixed" on the ground that "the W parameter does not represent a fixed duration." Reply at 9. The Courts is unpersuaded by this argument in light of the specification's description of analysis windows as "fixed segment lengths." Id. patent col. 5 ll. 65-68.

EPL also argues against a construction that includes the phrase "that is the smallest unit that the time-scale modification method manipulates" on the ground that this phrase would confuse the jury because it improperly indicates "that W can only have a single value – based on whatever is the smallest unit that the system can manipulate." EPL Reply at 9. This argument is unavailing. First, the specification expressly defines the W parameter as "represent[ing] the smallest unit of the input signal . . . that is manipulated by the method," and for that reason, the inclusion of this definitional phrase in the term's construction is appropriate and would be helpful

United States District Court
Northern District of California

to the jury.  '769 patent col. 7 ll. 7-21.  Second, the Court's construction in no way implies that W can have only a single value.  Rather, when read in the context of the asserted claims and the specification, it is clear that the construction indicates that the value of W depends on the time modification selected.

### E.      "Ss" – '769 Patent claims 2, 11

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| "a parameter that represents the interframe interval between successive analysis windows along the output signal" | "a parameter that represents a fixed interframe interval between successive windows of length W along the output signal" |

**The Court adopts a variation of Apple's proposed construction, namely "a parameter that represents a fixed interframe interval between successive analysis windows of length W along the output signal."**

This construction is consistent with the specification, which describes the "present invention" as having "an output signal is reconstructed using a <u>fixed</u> inter-block offset Ss."  '769 patent col. 5 ll. 7-13 (emphasis added).  The construction also adequately captures the specification's description of Ss as "the interframe interval between successive <u>analysis windows</u> along the output signal," which have a "window length W."  <u>Id.</u> col. 7 ll. 7-21 (emphasis added).

Apple opposes adopting a construction that defines the output signal segments as "analysis windows" on the ground that this phrase is not used in the asserted claims.  The Court finds that the phrase "analysis windows" is repeatedly used in the specification to describe the windows of the output signal and that its use in the construction of the term at issue therefore would achieve clarity and consistency.  <u>See, e.g.</u>, <u>id.</u>

EPL argues in favor of a definition that omits the word "fixed" based on arguments similar to the ones it offered in connection with the construction of the terms "Wov" and "W."  The Court rejects these arguments in light of the specification's explicit teaching that the values for Ss are "fixed."  <u>Id.</u> col. 5 ll. 7-13.

United States District Court
Northern District of California

**F.**     **"time scale modification/time scale modifying" — '769 patent claims 1, 10, 19**

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| "speeding up or slowing down the playback rate" | "a change to a signal's rate of reproduction without modifying its pitch" <br> or <br> "changing a signal's rate of reproduction without modifying its pitch" |

The parties dispute whether the definition of these terms should include the phrase "without modifying its pitch."

**The Court finds that the inclusion of this phrase in the definition is not warranted and thus adopts EPL's proposed construction.**

EPL's construction is consistent with the specification, which describes time-scale modification as something that can be achieved by either "time-scale compression, i.e., a method for speeding up a playback rate of the signal, or by time-scale expansion, i.e. a method for slowing-down the payback rate of the signal." '769 patent col. 1 ll. 27-31.

Apple contends the phrase "without modifying its pitch" must be included in the term's construction because the phrase is used several times in the specification when discussing embodiments of the invention. The Court rejects this argument on the ground that there is no intrinsic evidence showing that the claims at issue must be limited to time-modifications that result in *absolutely* no pitch distortions, which is what the phrase "without modifying its pitch" requires.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

11

**G.    "current time" — '903 patent claims 4, 12, 22; '050 patent claims 4, 16; '720 patent claims 1, 6, 7, 11**

| EPL's proposed construction | Apple's proposed construction |
|---|---|
| "a current position in the media content that can be expressed either as the time elapsed since the beginning of the media content presentation or as a location in the media content stream that is currently being played" | "measure of time that is unresolved as to whether the rendering system should return a presentation time parameter value or a data time parameter value" |

**The Court adopts EPL's proposed construction.**

This construction reflects the specification's definition of current time as a "current position in the media content that is being displayed and rendered" and that can be represented by either "presentation time" or "content time." '903 patent col. 1 ll. 27-29, 50-68; col 2 ll. 1-7.  The specification further defines presentation time as "time elapsed since the beginning of the media content presentation" and content time as "a location in the media content stream that is currently being played."  Id. col. 1 ll. 52-55, 64-66.

The Court declines Apple's invitation to use the word "unresolved" to define the term at issue, because this word conveys a meaning that is not directly supported by the specification or the claim language, and its use therefore could result in jury confusion.

**IV.    CONCLUSION**

The Court construes the seven disputed terms as follows:

| Disputed term | Construction |
|---|---|
| "determining an input block of W signal representations from the input Stream" | "searching for and identifying the starting position of an input block of W signal representations that is similar to the output stream" |
| "Wov" | "a parameter that represents a fixed number of signal representations to be overlapped as determined by W and the time-scale modification" |

United States District Court
Northern District of California

| Disputed term | Construction |
|---|---|
| "determined by" | "uniquely specified by" |
| "W" | "a parameter that represents a fixed duration of the windowed segments of the input signal and that is the smallest unit of the input signal that the time-scale modification method manipulates" |
| "Ss" | "a parameter that represents a fixed interframe interval between successive analysis windows of length W along the output signal" |
| "time scale modification/time scale modifying" | "speeding up or slowing down the playback rate" |
| "current time" | "a current position in the media content that can be expressed either as the time elapsed since the beginning of the media content presentation or as a location in the media content stream that is currently being played" |

**IT IS SO ORDERED.**

Dated:  February 3, 2014



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California